D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DANIEL STELLA,

                    Plaintiff,

    -against-

BRANDYWINE SENIOR LIVING, INC.,
BRANDYWINE SENIOR LIVING AT
HUNTINGTON TERRACE LLC, JENNIFER
RIEDMAN, LIAM RYAN, and RICH HEANEY,

                    Defendants.
------------------------------------------------------------X

**ORDER**

11-CV-1094 (SJF)(GRB)

FILED
IN CLERK'S OFFICE
US DISTRICT COURT EDNY

★ AUG 27 2012 ★

LONG ISLAND OFFICE

FEUERSTEIN, United States District Judge:

On March 8, 2011, plaintiff Daniel Stella ("plaintiff") commenced this action against defendants Brandywine Senior Living, Inc., Brandywine Senior Living at Huntington Terrace LLC, Jennifer Riedman ("Riedman"), Liam Ryan ("Ryan"), and Rich Heaney ("Heaney") (collectively, "defendants"), alleging: (1) gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); (2) retaliation in violation of Title VII; and (3) retaliation in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq. ("Human Rights Law"). [See Docket Entry No. 1]. On January 30, 2012, defendants moved for summary judgment. [Docket Entry No. 35].

Before the Court is the Report and Recommendation of Magistrate Judge Gary R. Brown (the "Report" or "R & R"), which recommends that defendants' motion be denied except insofar as it seeks dismissal of the Title VII claims against individual defendants Riedman, Ryan, and

1

Heaney. [Docket Entry No. 52]. Defendants have filed timely objections to the R & R.[1] For the following reasons, defendants' objections are overruled, and the Report is adopted in its entirety.

I.   Standard of Review

Rule 72 of the Federal Rules of Civil Procedure permits a magistrate judge to conduct proceedings of dispositive pretrial matters without the consent of the parties. Fed. R. Civ. P. 72(b). Any portion of a report and recommendation on dispositive matters to which a timely objection has been made is reviewed de novo. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). However, "when a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the report strictly for clear error." Frankel v. City of New York, Nos. 06 Civ. 5450, 07 Civ. 3436, 2009 WL 465645, at *2 (S.D.N.Y. Feb. 29, 2009). The Court is not required to review the factual findings or legal conclusions of the magistrate judge as to which no proper objections are interposed. See Thomas v. Arn, 474 U.S. 140, 150 (1985). Whether or not proper objections have been filed, the district judge may, after review, accept, reject, or modify any of the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

II.   Discussion

   A.   Defendants' Objections

Defendants' objections to the R & R are as follows: (1) that defendants are entitled to

---

[1] Although plaintiff originally submitted objections to the R & R, he has since withdrawn them. [Docket Entry No. 59].

summary judgment on the sexual harassment claim; (2) that defendants are entitled to summary judgment on plaintiff's Title VII retaliation claim; (3) that defendants meet the requirements to claim the Faragher-Ellerth defense; and (4) that, because summary judgment must be granted with respect to the Title VII claims, the state law claims must be dismissed. [Docket Entry No. 53].

1. Objection 1: Plaintiff's Sexual Harassment Claim

"One form of gender discrimination prohibited by Title VII is sexual harassment that results in a 'hostile or abusive work environment.'" Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir. 1998) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986)). "A hostile work environment claim requires a showing (1) that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and (2) that a specific basis exists for imputing the objectionable conduct to the employer." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)). The misconduct shown must not only be sufficiently severe or pervasive to create an "objectively hostile or abusive work environment," but the victim must also "subjectively perceive" the environment to be abusive. Id. at 374 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). "[I]t is 'axiomatic' that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must also demonstrate that the conduct occurred because of [his] sex." Id. (citing Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001)).

3

The discriminatory conduct alleged by plaintiff is as follows. Plaintiff testified that Riedman frequently appeared in places where he was working, including electrical closets, store rooms, and empty apartments. Plaintiff's Deposition, Defendants' Exhibit 5 ("Pl. Dep.") [Docket Entry No. 37-2] at 142:2-142:23. These were not places that plaintiff would ordinarily have expected to see an executive director. Plaintiff's Affidavit ("Pl. Aff.") [Docket Entry 58, Ex. A] at 7-8. According to plaintiff, the first specific instance of harassment occurred on June 16, 2010, when Riedman "took [him] in her office," "closed the door," and gave him a black polo shirt, which Riedman told plaintiff to put on because she "want[ed him] to look good for [her]." Id. at 145:7-146:8; 164:6-19. Plaintiff claims that, as she pulled the shirt out from a box, Riedman "bent down pushing her buttocks upon towards [him] [sic] in a suggestive manner." Pl. Aff. at 8. Plaintiff further testified that Riedman offered to give him a corporate credit card in order to purchase additional work clothes "on [her]." Pl. Dep. at 146:5-8. Plaintiff says that he told Riedman: "I didn't need you to buy me no clothes. I can afford my own clothes . . . ." Id. at 147:7-9.

Several days later, on June 21, 2010, plaintiff requested a day off from work, to which Riedman allegedly responded: "Well, I'll approve it but just remember, I'll take care of you if you take care of me." Id. at 162:21-163:5. Plaintiff claims that he responded: "Listen, I don't play that game." Id. Plaintiff testified that on July 16, 2010, Riedman invited him out for a drink, an invitation he declined, and that on July 23, 2010, Riedman stated to plaintiff that flowers near the facility "look just as good as [him]." Id. at 166:4-168:16; 191:11-192:21. On July 30, 2010, while in her office with the door closed, Riedman allegedly rubbed his inner thigh between the knee and groin, id. at 172:2-177:23, to which plaintiff responded that he "wanted to

be left alone," id. at 183:2-9. Plaintiff further testified that, on an unknown date during June or July 2010, Riedman had given him "the tap on [his] ass type deal" while in an electrical room. Id. at 183:15-184:20. On a separate occasion, also during June or July 2010, Riedman allegedly "nuzzled up" to him, "com[ing] up under [his] shoulder" while they were alone in her office with the door closed. Id. at 185:25-187:22. According to plaintiff's testimony, he interpreted this to be part of an attempt to "strong arm [him] into a position of proposition." Id. at 187:19-22.

First, defendants argue that the gender discrimination claim must be dismissed because the conduct at issue was "facially gender neutral" and not "sex-based." Pl. Obj. at 5. However, the alleged comments, including "I want you to look good for me," coupled with the alleged incidents of touching, are sufficient to raise a reasonable inference that the conduct occurred because of plaintiff's gender. Insofar as the remaining comments are facially neutral (*e.g.*, inviting plaintiff for drinks), it is settled that "incidents that are facially sex-neutral may sometimes be used to establish a course of sex-based discrimination – for example, where the same individual is accused of multiple acts of harassment, some overtly sexual and some not." Alfano, 294 F.3d at 375 (citing cases).

Second, defendants argue that the conduct alleged is insufficiently severe or pervasive to establish a hostile work environment. "[T]he line between boorish and inappropriate behavior and actionable sexual harassment . . . is admittedly indistinct, [and] its haziness counsels against summary judgment." Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 605 (2d Cir. 2006) (quoting Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 75 (2d Cir. 2001)). "An Article III judge is not a hierophant of social graces. Evaluation of ambiguous acts . . . presents an issue for the jury." Holtz, 258 F.3d at 75 (quoting Gallagher v. Delaney, 139 F.3d 338, 347 (2d Cir. 1998)).

5

The pattern of conduct alleged by plaintiff over this time period, if proven to be true, could be sufficient to establish his hostile work environment claim. Although no individual incident, if taken in isolation, might be severe enough to rise to this level, the cumulative effect of the alleged incidents, which included ambiguous, if not overtly sexual, comments and unwelcome touching, particularly from a supervisor, may be sufficient. See, e.g., Redd v. New York Div. of Parole, 678 F.3d 166, 178-82 (2d Cir. 2012) (three (3) incidents of unwelcome touching sufficient to establish hostile work environment); Gallagher v. Delaney, 139 F.3d 338, 347 (2d Cir. 1998) (supervisor's repeated invitations, gifts, and comments sufficient), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)); Carrero v. N.Y. City Hous. Auth., 890 F.2d 569, 578 (2d Cir. 1989) (unwelcome touching and kisses by supervisor "tantamount to coercion").

There are also triable issues of fact as to whether plaintiff subjectively perceived the work environment to be hostile. Just hours before he was terminated, plaintiff called his supervisor to complain about Riedman's conduct, Plaintiff's 56.1 Statement ("Pl. 56.1 Stat.") [Docket Entry No. 43] at 1-2, and according to plaintiff's testimony, he told Riedman that he "wanted to be left alone." See Anderson v. Nassau Cnty. Dept. of Corrections, 558 F.Supp.2d 283, 296 (E.D.N.Y. 2008) (plaintiff's complaints to superiors sufficient to raise inference that plaintiff perceived environment as hostile).

2. Objection 2: Plaintiff's Retaliation Claim

Next, defendants argue that they should be granted summary judgment with respect to plaintiff's retaliation claim. "Title VII retaliation claims follow the three-part burden-shifting

analysis set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 107 (2d Cir. 2011).

> First, the plaintiff must establish a prima facie case of retaliation by showing: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. The plaintiff's burden in this regard is de minimis and the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive. If the plaintiff sustains this initial burden, a presumption of retaliation arises. The defendant must then articulate a legitimate, non-retaliatory reason for the adverse employment action. If so, the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action.

Id. (quoting Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010)).

First, defendants argue that plaintiff's complaint was too "vague" to constitute "protected activity." In a sworn affidavit, plaintiff states that he called Liam Ryan on August 6, 2010 and informed him that Riedman had, among other things, "strok[ed his] thigh up to [his] groin," "fe[lt his] buttock," and made verbal comments that were "suggestive." [Docket Entry No. 58] Ex. A at 9. This is sufficient to raise an issue of fact as to whether plaintiff engaged in protected activity and whether defendant knew of it. See Redd, 678 F.3d at 174 (on summary judgment, "[t]he evidence of the non-movant is to be believed; all permissible inferences are to be drawn in [his] favor; and the court must disregard all evidence favorable to the moving party that the jury is not required to believe") (internal citations and quotation marks omitted).

Second, defendants argue that plaintiff was fired for insubordination, not for his complaint to Ryan, and so there was no "causal connection" between the protected activity and adverse action. Def. Obj. at 16-17. Once again, the genuine reason for plaintiff's termination is

7

a disputed issue of fact, and plaintiff's "proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." The requisite "causal connection" between the complaint and plaintiff's termination can be inferred from the very close temporal proximity between the two (2) events. See generally Monte v. Ernst & Young LLP, 330 F.Supp.2d 350, 364 (S.D.N.Y. 2004) (causal connection element shown when plaintiff was terminated one day after informing employer of his complaint).

Third, defendants argue that there is insufficient evidence of pretext. Def. Obj. at 17-18. Defendants argue that plaintiff was terminated not because of his complaint, but because he called Riedman an "insensitive, uncaring son of a bitch" and was "loud and abusive," "continu[ing] to yell into Brandywine's hallway." Defendants' Memorandum in Support of Summary Judgment [Docket Entry No. 38] at 18-19. In his affidavit, plaintiff recognizes that he called Riedman an "insensitive, uncaring son of a bitch," but only *after* she informed him that his employment was terminated. Pl. Aff. at 11. The affidavit of Sheila Cooke also supports plaintiff's claim that there was no "yelling" during his encounter with Riedman. [Docket Entry No. 42-1].

Thus, the retaliation claim survives summary judgment.


3. Objection 3: Availability of the Faragher-Ellerth Defense

Next, defendants object to the Report's determination that they cannot claim the protection of the so-called Faragher-Ellerth defense. "Th[is] defense comprises two elements: (1) 'the employer exercised reasonable care to prevent and correct promptly any [discriminatory] harassing behavior,' and (2) 'the plaintiff employee unreasonably failed to take advantage of any

8

preventive or corrective opportunities provided by the employer to avoid harm otherwise.'" Ferraro v. Kellwood Co., 440 F.3d 96, 101 (2d Cir. 2006) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)). The defense is unavailable where a "supervisor's harassment culminates in a tangible employment action, such as discharge." Sicular v. NYC Dept. of Homeless Servs., 455 Fed. Appx. 129, 130 n. 1 (2d Cir. Jan. 25, 2012) (quoting Faragher, 524 U.S. at 808).

Defendants have failed to demonstrate conclusively that they are protected by this doctrine. As Magistrate Judge Brown noted, plaintiff alleges that the harassment culminated in his discharge. Although defendants claim that plaintiff was actually terminated for his insubordination and use of profanity, see Def. Obj. at 20, this dispute presents an issue for the jury. Moreover, plaintiff alleges that he made a verbal complaint to Ryan, his direct supervisor, and therefore took advantage of at least one preventive or corrective opportunity available to him.

4. Objection 4: Plaintiff's Claims Under the New York State Human Rights Law

Finally, defendants argue that the New York State Human Rights Law claims must be dismissed because plaintiff has failed to create issues of fact with respect to either Title VII claim. For the reasons discussed supra, plaintiff's Title VII claims raise issues of fact to be resolved by a jury. This objection is therefore overruled.

III. Conclusion

The Court has reviewed the remainder of the Report and finds that it is not clearly erroneous.

For the foregoing reasons, the R & R is adopted in its entirety as an order of the Court. Defendants' motion for summary judgment is DENIED, except to the extent indicated in the R & R. A final pre-trial conference before the undersigned will be held on **Thursday, September 6, 2012 at 11:15 a.m.**, at which time the Court will set a firm date for jury selection and trial.

Plaintiff's motion for a hearing [Docket Entry No. 60] is denied as moot.

**IT IS SO ORDERED.**

s/ Sandra J. Feuerstein
Sandra J. Feuerstein
United States District Judge

Dated: August 27, 2012
Central Islip, New York